IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLETE REO HART,

    Plaintiff,                              No. CIV S-05-0671 LKK GGH P

    vs.

DIRECTOR OF HUMAN RESOURCES
CALIFORNIA MEDICAL FACILITY, et al.,

    Defendants.                       <u>ORDER</u>

/

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. By order filed on August 25, 2006, plaintiff's complaint was dismissed with leave to file an amended complaint. Plaintiff has filed an amended complaint that does not adequately cure the defects of the original complaint.

        The court will not reiterate the standards for screening complaints brought by prisoners, fully set forth in the prior order. Plaintiff has, at least, in his amended complaint identified a number of defendants: Mr. Snively, Occupational Therapy Director at California Medical Facility (CMF)-Vacaville; Assistant Ethel Andrews; CCI Stubbs; C/O Kent; C/O Sandine; C/O Park; W. Bouton; Lt. Roszko; Dr. Canning; Dr. Morgenstern; CCI Pappa. As to defendants identified as "Catholic Priest" and "Education Staff," plaintiff has failed to provide either sufficient allegations linking these parties to any constitutional deprivation to which he has

1

been subjected or adequate identification for the court to direct service of process should he have done so, and these defendants will be dismissed.

As to defendant Kent, plaintiff alleges that in early to mid 1999, this defendant asked plaintiff to be an informant with respect to drug trafficking in the institution.[1] Amended Complaint (AC), p. 3. Plaintiff then proceeds with allegations that run together in a manner that lacks coherence: "I agreed [to be an informant], after all defendants listed told the entire institution that I was a 'rat,' a 'snitch,' 'white trash,'etc., etc., i.e., sharing confidential information, the information that I received led me to the Education Department, as well as other departments." Id.

It simply lacks any logic whatever that plaintiff would have agreed to serve as an informant after all the defendants had spread the word that he was a "snitch," etc.; nor does it make sense that he would have been called a "snitch" before he was an informant or that defendant Kent, inter alia, would have spread the word that he was one if defendant expected him to become an informant to obtain useful information. Nor does plaintiff's allegation with regard to undefined "confidential information" that was supposedly shared have substance. It is possible that plaintiff is stating all defendants "shared" confidential information about plaintiff throughout the institution, but he does not make that clear. Nor is it enough to say in a conclusory fashion that "all defendants" did it, without providing some context and specificity as to each defendant's participation. Plaintiff must more specifically allege what information he is referencing and, to the extent he knows the circumstances of the information sharing, how and by

---

[1] The court takes judicial notice that in a pending case plaintiff filed prior to this one, he alleges that the same defendant, C/O Kent, asked plaintiff to become an informant about drug trafficking in the facility, to which request plaintiff agreed, "on or about July 1, 2003." See Case No. CIV S-04-1424 MCE DAD P, Docket Entry No. 14. (A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980)). Plaintiff undermines his credibility by alleging significantly different dates for the same predicate fact, albeit in two different actions.

whom and when such information spreading occurred.

The requirements of Fed. R. Civ. P. 8 were set forth in the August 25, 2006 order and will not be repeated here. Suffice it to state that plaintiff was informed, inter alia, that Rule 8 requires only "sufficient allegations to put defendants fairly on notice of the claims against them," McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991), yet plaintiff has failed once again to do so. This claim, to the extent that it is one, will be dismissed; plaintiff will be granted one further opportunity to amend.

Plaintiff goes on to claim that in class, presumably in the Education Dept., he was a vocational electronics student when "a conspiracy against my education started." AC, p. 3. Plaintiff began to feel "uncomfortable," so he began to look for a job placement because under CDC regulations he is not required to have an education. AC, pp. 3-4.[2] Defendants Snively and Andrews interviewed him for a position in Occupational Therapy (OT), whereupon it was agreed that plaintiff would soon start once the necessary paperwork and counselor and committee changes were completed. AC, p. 4.

However, once the unnamed OT staff learned of plaintiff's status as an informant, which information plaintiff's instructor defendant Bouton also apparently acquired, although this is not clearly stated, these individuals became "suspiciously nervous" and plaintiff's offer of employment "was soon to change" because at the time, there was at least some drug trafficking occurring through the Education Dept. AC, p. 4. (This allegation is confusing, among other reasons, because plaintiff appears to have stated earlier that he no longer was involved with the Education Dept. at this point).

Plaintiff then states that he was directed by an unidentified person or persons to report to defendant Park in "I.S.U.," which he did for months but from whom he got no response

---

[2] Plaintiff has mis-numbered the pages of his amended complaint, i.e., page 3 precedes page 2 in his numbering system. The court begins the discussion of his claims on the page numbered 3 by plaintiff with the "Statement of Claim" (even though it is page 8 of the filing) and then proceeds chronologically from page 3.

3

AC, p. 4. Plaintiff does not plainly state, inter alia, why he was sent to defendant Park and for what reason he would have needed any response. Plaintiff alleges that things began to become "sticky," (id.), again without specificity and without informing the court as to precisely what he means, i.e., what "things" became "'sticky,'" who caused the "sticky" conditions and how such conditions could be deemed to constitute constitutional deprivations.

Without further explanation, plaintiff then alleges that he was interviewed by more than one unnamed doctor as well as unnamed social workers and unnamed "staff at many levels" and was soon issued many disciplinary 115's that were "all lies" and "all fraudulent." AC, p. 4. Defendant Dr. Canning, who had originally praised plaintiff for his "informant status and valor," then wrote an assessment that was the opposite of such praise that accompanied the first CDC 115 that was written by defendant Park. AC, p. 5. Plaintiff was found guilty by defendant Roszco for "overfamiliarity and manipulation" of defendant Kent, the person who had sought information from plaintiff, and therefore the person who had actually manipulated plaintiff, not the reverse. Id.

Plaintiff concludes:

> It looks as if my education, job change, mental competency, reputation, etc., all became attacked and in question as I believe that ultimately I had told on staff as well as the inmates who represent them. It has become evident that California Medical Facility is a prison used to store and employ "dirty" cops. While this "informant" position and many questions became under fire an entire 46 year "color of law" "conspiracy against my rights" was uncovered, probably leading to the education and employment "conspiracy" aforementioned. The "conspiracy against my rights" continues today and now a 46 year conspiracy has been found and must be ended."

AC, p. 5.

Plaintiff seeks, inter alia, as relief, "his immediate release," as well as "all back pay, a settlement of $100,000,000.00, an investigation of all past and present employment and prospects, including education and identity theft of myself by the police within this institution as well as throughout society ...."

4

Plaintiff's claims of conspiracy, much less one that has been on-going for 46 years, are without any foundation in the allegations he has set forth. The conspiracy claims are wholly insufficiently supported as are his inapposite claims for relief, all of which render this amended complaint not only frivolous but virtually meaningless. Vague and conclusory allegations are not sufficient to support a claim for civil rights violations based on conspiracy. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). To support claims of conspiracy, plaintiff must make some showing of an agreement or a meeting of the minds on the part of defendants to violate his constitutional rights. Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989), citing Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983). Conspiracy allegations must be supported by material facts and not be merely conclusory statements. Lockary v. Kayfetz, 587 F. Supp. 631 (N. D. Cal. 1984). Moreover, to the extent that he claims that he was deprived of a job opportunity, plaintiff does not show an actual deprivation of his constitutional rights resulting from the alleged conspiracy. Woodrum, supra, citing Singer v. Wadman, 595 F. Supp. 188 (D. Utal 1982 ("conspiracy allegation, even if established, does not give rise to liability under § 1983 unless there is an actual deprivation of civil rights"). Plaintiff's conspiracy claims as to all defendants will be dismissed with one final opportunity to amend.

As plaintiff was previously informed, inmates have no constitutional right to work. Baumann v. Arizona Dept. of Corrections, 754 F.2d 841, 845 (9th Cir. 1985). Since plaintiff does not have a constitutional right to a prison job, much less to a particular job, he is not entitled to due process procedural protections prior to being deprived of his work, nor is he constitutionally entitled to any back wages for either a failure to obtain a particular job or the loss of that job; similarly, he is not entitled to placement or reinstatement into any position. Plaintiff's job-related claims will be dismissed but plaintiff will be granted one final opportunity to amend.

\\\\\

Also, as plaintiff was told in the prior order dismissing his original complaint, to the extent that plaintiff intends to claim that he has been subjected to retaliatory prison disciplinary action, inmates do have a right to be free from the filing of false disciplinary charges in retaliation for the exercise of constitutionally protected rights. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). In order to state such a claim of retaliation, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989); Rizzo 778 F.2d at 532. The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt at 806 (citing Rizzo at 532). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n.1) (10th Cir. 1990). Plaintiff's allegations are too vague and conclusory to state colorable claims of retaliation and any such claims will be dismissed with leave granted for one last opportunity to amend.

To the extent that plaintiff seeks his release from custody, he seeks a form of relief unavailable in a § 1983 action.

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. 1979, as amended, 42 U.S.C. 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief turning on circumstances of confinement may be presented in a 1983 action.

Muhammad v. Close, 540 U.S.749, 750, 124 S.Ct. 1303, 1304 (2004) (per curiam).

Finally, in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), an Indiana state prisoner brought a civil rights action under § 1983 for damages. Claiming that state and county officials violated his constitutional rights, he sought damages for improprieties in the investigation leading to his arrest, for the destruction of evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure"). Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not seek injunctive relief or release from custody. The United States Supreme Court affirmed the Court of Appeal's dismissal of the complaint and held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under 1983.

Heck, 512 U.S. at 486, 114 S. Ct. at 2372. The Court expressly held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged or reversed. Id.

In Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584 (1997), the Supreme Court held that Heck applies to challenges to prison disciplinary hearings when the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment. Edwards rejected the Ninth Circuit's holding in Gotcher v. Wood, 66 F.3d 1097, 1099 (9th Cir. 1995) that a claim challenging only the procedures employed in a disciplinary hearing is not barred by Heck. To the extent that plaintiff may be seeking money damages for alleged violations of his constitutional rights in any prison disciplinary that may have resulted in the loss of time credits, plaintiff has not shown that any such disciplinary action has been reversed or

invalidated. Plaintiff's amended complaint will be dismissed in its entirety but plaintiff will be granted leave to amend only one more time.

If plaintiff chooses to amend the complaint, plaintiff must name individual defendants upon whom the court may be able to direct service of process. He must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 15-220 requires that any amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Accordingly, IT IS ORDERED that:

1. Plaintiff's amended complaint is dismissed for the reasons set forth above with leave to file a second amended complaint within thirty days from the date of service of this order. Failure to file a second amended complaint will result in a recommendation that the action be dismissed; and

\\\\\

2. Should plaintiff fail to set forth claims cognizable, pursuant to 42 U.S.C. § 1983, in any second amended complaint, this court will recommend dismissal of this action for failure to state a claim upon which relief may be granted.

DATED: 4/18/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
hart0671.amd